May it please the court, Rocky Dorsey on behalf of the appellant Everett Lopez. If I might reserve four minutes for rebuttal. You bet. Your honors, at the heart of this case are two very important legal principles. The first is the circumstances under which we deny a discharge to a debtor in bankruptcy. The determination of discharge is one exclusively within the purview of the federal bankruptcy court. And in longstanding law, these exceptions are to be strictly construed in favor of not denying discharges. This is true because the most harsh penalty you may receive in bankruptcy court is to deny your discharge. The second legal principle is that when we consider the applicability of issue preclusion, reasonable doubt as to what was decided in a prior judgment should be resolved against issue preclusion. This is consistent with the rule that preclusion is an affirmative matter and that the proponent of the preclusion has the burden of persuasion and thus must suffer the burden of risk of non-persuasion. In your view, what did the state court find? Well, you have to ask two questions when you address that issue, your honor. First is, was there, was the issue of willful and malicious intent to cause injury ever litigated? And then if you go beyond that, you say, what then do these words mean when he says willful and malicious misrepresentation in this, after the court had decided and rendered its ruling on this? Well, let me ask it in another way. It seems to me that the state court found that there was misappropriation of a confidential client list, that it was used to solicit the competitor's customers, all the while bad-mouthing the competitor to the customers, and that those acts were intentional and willful. So are those factual findings binding? Well, you made an interesting point. You said the acts were willful and malicious, which really goes partly to the heart here. But no, this case is unique from all the cases cited because unlike the other cases cited, this court said, I'm going to bifurcate this. I'm only going to make rulings as to equitable issues because I'm going to deny you your right to a jury trial. So if we are to assume that the judge meant that when he said that, the state court, the state court judge meant that when he said that, that really makes his statement at the end of the trial in his decision on the record when he says, I'm awarding you attorney's fees because you're the prevailing party, that's completely consistent with his idea that he was not ruling on legal issues because he wasn't awarding damages. Well, doesn't he have to find under California civil code that there was willful, malicious  damage? Well, the answer is, is if that, what we have to clarify, DeWitt says he must have an explicit finding. We don't have, we shouldn't have to go to the record and glean from other issues, whether that's what he intended to do. When I worked to make that finding, he would have to have done that though. Is that true? No, because he wasn't supposed to do that. According to him himself, the judge was saying, I'm not going to rule on because when he, that language is put in by appellant after the trial is over. The question is, is there a reasonable doubt as to what the judge thought it was he was ruling on? In fact, if you go to... Now, you're saying that he didn't explicitly rule on the question of injury, that this... Intent injury. The, the, but it seems to me that the findings that were made necessarily carry with them an intent to cause injury. If you steal somebody's client list, you use it to solicit their customers, and you badmouth the, the, the stolen from party to those customers, at a minimum, you've injured their goodwill, if not their actual business. It is, it seems inescapable. If the judge wanted to rule on that, he should have had a jury trial, which would have allowed the jury to decide those factual issues, because those were not required findings for a really... No. And the reason they're not is this. You go to the pleadings filed by opposing counsel, and while they highlight very nicely that malice means, could mean, intent to cause injury, it, they do not highlight, on page 20 of their brief, the second reason why someone may find malice. And what malice means in that code section is, is that you've committed an act, let me make sure that I, that I, conduct, which is carried on by the defendant with a willful and conscious disregard for the rights or safety of others. That goes to conduct, not to injury. And that's one of the definitions of malice cited by counsel themselves. So to find malice under the code section they themselves cite, you don't have to find intent to injure, you only have to find conduct. Conduct that you say is, is so, so bad that you disregard the rights. As I read Ormsby, it's enough to show that the debtor must have known that the injury was substantially certain to occur. Where is that explicit finding anywhere? Other than these, these words. Well, Ormsby doesn't, I guess, I, I, I'm, I'm having difficulty squaring what you're saying now with Ormsby, which seems to permit natural and appropriate inferences to be drawn and does not appear to require the level of explicitness that you are arguing for. I would argue, too, that both Barboza, Sue, Geiger disagree. This analysis is... Well, Ormsby is our most recent case on this, is it not? I would say that... 2010 case? Geiger is the Supreme Court case that says you must analyze specific intent to cause injury. And I would, I would suggest to the court that, again, the uniqueness of this case, and, and, as I was getting dressed to come, get on an airplane to come here on a case that I'm never going to get paid for, my wife said to me, Rocky, you're a good man for staying by Mr. Lopez all these years, and I said, you know, maybe not. Maybe I'm part of the problem here. Because in an issue that's so clear to me, I've been clearly unable to articulate it to another court, that what this judge did was, he said, I'm not going to rule on this legal issue of damages. I'm not going to do this. So when you look at this, your reasoning, I think, is compelled to say, is there an alternative reasonable explanation for what the judge did here? And the answer is, yes, there is. In his own finding, he says, I'm awarding these damages, these damages of attorney's fees because you're the prevailing party. That would have been completely consistent with him not having a jury trial. That would have been consistent with that issue. It would be completely inconsistent if the judge said, now that I've found you guilty of misrepresent, or the, the faking of trade secrets, now I'm going to make a filing that's inconsistent with my position, which I've stated 20 times on the record, that you're not entitled to a jury trial because I'm not issuing damages. Let me take your point that the state judge screwed this up somehow. Well, either that, or he didn't even understand the significance of those words included later on. Okay, let's take that as a given then. Do you appeal that to the California Court of Appeal? To about? No. I'm talking about what the state judge did. Oh, I wasn't part of this. Oh, he did take an appeal, but he ran out of money and had to file for bankruptcy. So that's the final judgment then? Yeah, that's the final judgment. Well, then where do we come off not recognizing it? Because the issues of 520.23.86 asked you to make an inquiry that is exclusive to that of the federal courts, whether this is dischargeable. And it's only dischargeable if there was a specific finding, not gleaned from the record. See, again, when I worked for Judge Lazaro many years ago, Judge Lazaro would go crazy when someone would put buzzwords in their pleading rather than the underlying facts that supported it. This judge could have easily said, you know, I'm specifically finding that there was intent to commit injury, and therefore there was willful and malicious misappropriation. But by just using the buzzwords willful and malicious, which weren't words of his, never appeared in any pleading. Weren't there factual findings by the state court judge as well, as we talked about here, where he concluded, based upon the facts, whether you like it or not, that he could award attorney's fees because the conduct met what was considered malicious under the California code? He asked a different question, and that was, what is the reasoning that would make sense here, because the judge may be messed up? I'm thinking he didn't. I don't think those are words. But also remember, under Geiger and Sue, they're supposed to have actually been litigated, this issue, not just included later after the trial. There had to be a specific finding somewhere in the record. And I'm telling you that that finding, specifically when you take a look at Civil Code Section 3426-1A, cited by counsel, there's an alternative meaning for the word malicious that does not require intent to cause injury. Once you get there, we should be done. And that's where I feel that maybe I'm letting my client down, because that's so crystal clear to me. I'm not sure how I could say that any clearer than to say, well, what is crystal clear? That under Civil Code Section 3426-A1, there is an alternative definition of malice that does not require intent to cause injury. And because he only used the word malicious, we have to take a look at that and see if there's reasonable doubt as to what that judge intended to find. Because the word is, it can be intent to cause injury, or it can just be conduct. It can just be conduct that's despicable conduct. Call it whatever you want. That's despicable, horrible, the meanest thing in the world. Which is carried out with a willful and conscious disregard. Disregard for the rights. Willful and conscious. For the right. Not for injuries. And the Court didn't find injuries here. Let's make that clear. So are you familiar with United States v. Ormsby, the case I asked you about before? I'm sorry that I'm not. I don't recall seeing it. It strikes me that your argument does not square with it. As I read it, it allows us to make reasonable inferences from what the state court did find and not have to rely only verbatim on the exact words of those findings. And I think that's what all of us are trying to get at, is that these are necessary implications. I do not think it would be a reasonable inference to assume that the judge violated his own statements on the record, which he made 20 times, that I'm not letting you have a jury trial because I'm not awarding damages. I think it's a more reasonable inference to assume what the judge thought he was doing was awarding attorney's fees because he was allowed to because they were the prevailing party. That is completely inconsistent with the statement you just made from Ormsby. It would be inconsistent for him to do otherwise. Mr. Dorsey, you wanted to reserve some time. You have about 2 1⁄2 minutes left. Oh, sorry, Your Honor. I have 1 1⁄2 minutes. Good morning. Good morning, Your Honors. May it please the Court, Geraldine Valdez of Procopio, appearing on behalf of Attali Emergency Service Restoration, Inc. Your Honors, since Grogan v. Garner, collateral estoppel has regularly been applied in bankruptcy non-dischargeability actions, where the elements of willful malicious have already been litigated in a state court action. If we had to have a decision from a state court that explicitly stated, I find an intent to injure, it would more or less eviscerate the whole idea of collateral estoppel. The Court needs to look at the totality of the circumstances and the findings on the record. We're not going to ever see, probably, that there has been an intent to injure. And less regularly does the Court even have the luxury of a written statement of decision where the words willful and malicious are in that decision. And that's what we have here. There's four independent bases in the record which show that willful and malicious injury acts were conducted by the defendant here, the appellee. First of all, we have the trial court's oral statements in giving his tentative decision where he goes to specific instances of conduct which imply an intent to injure my client. Second, we have the statement of decision itself which contains the buzzwords willful and malicious. Secondly, we have several California cases under the unfair competition law which discuss an intent to injure where one party has intended to take business steps which are designed for the purpose of bringing down the competition. And they've implied an intent to injure in those cases. And fourthly, we have a majority of federal case law where this issue's been discussed where they have found that as a general proposition, the misappropriation of trade secrets constitutes and satisfies the elements for willful and malicious under Bankruptcy Code Section 523A6. First, the trial court in its oral tentative decision on the record stated, as the court just pointed out, that ESR was, customer's list was used by the appellant to solicit, actively solicit ESR's customers. And secondly, the trial court expressly says, and I quote, that Mr. Lopez, the appellant, was bad-mouthing ESR and trying to drag ESR down. Now, the implication from those statements is that appellant was trying to damage or injure ESR. And in other words, there was an intentional injury implied. Now, we go to the trial court's written statement of decision which states that the conduct was willful and malicious. Those findings of willful and maliciousness in the statement and decision were absolutely necessary for the court to award attorney's fees under the Uniform Trade Secrets Act. If they didn't exist, the court could not have awarded the attorney's fees. And for counsel to state that, well, I think what really happened was the court didn't understand what he was doing. If that's true and the court made a mistake, then his remedy was to go to the California appellate court. He can't come back now to the bankruptcy court and say, gee, I think that the trial court made a mistake. That's not the purpose under the full faith and credit court of a bankruptcy court to reread the record and then determine whether or not there were mistakes in the court below. That is the purview of the California appellate court. Then we have the question of whether willful and malicious under California law means the same thing as willful and malicious under the bankruptcy code. I submit that it does. The definition of malicious under the bankruptcy code under California law states that there can be an intent to injure implied into malicious conduct. And the VACO case is instructive here. That was a case where a jury awarded punitive damages under the malicious definition of malicious. The jury instruction defined malicious under California law. And the judge in that case, it was a misappropriation of trade secrets case, the judge in that case took back the punitive damages which the jury had awarded under the malicious standard and said, okay, I have the same definition of malicious now to apply. It's to award the attorney fee component of the award. Again, whether the trial court in this case should have awarded attorneys fees, given that the judgment itself was for restitution under the unfair competition laws and then he ordered damages under the Uniform Trade Secrets Act, I don't know if that was the correct decision. But we don't know that, and the California Appellate Court has never had an opportunity to rule on that issue. Finally, we have a couple of cases, Dooley Market and Celtec cases, which are cases under the California Unfair Trade Practices Act where we have a similar situation where there were two competing companies and again, those cases stated that an intent to injure is implied into that where one company tries to destroy the competition of another company for its own benefit. Counsel for appellant has cited a number of other cases for a different proposition, but these cases are factually dissimilar. These were all cases, for the most part, cases which were brought as private attorney general actions under the California Code of Business and Professions, 17200, where the general public was being harmed by things like misleading advertising, the way that a bank calculated interest, but the harms were to the general public and customers. They weren't of a competitive nature, and the only cases that deal with unfair competition between two businesses expressly state that an intent to injure is implied in those situations. Finally, we have the bankruptcy court cases and appellate court cases from other circuits which have dealt with this issue. I think it was the Eighth Circuit back in one case where willful and malicious was found in the lower court decision, applied that willful and malicious standard to the case in bankruptcy court, the dischargeability action, and applied collateral estoppel. We have another case where a jury found, that was out of the Central District of California, it was the Brown case, where the court found that because the jury had said that the defendant had acted with reckless disregard, that that satisfied the willful and malicious standard. And there's a number of other cases which stand for the same proposition, where there's been punitive damages, attorney's fees awarded, or willful and malicious was actually stated by the lower court that has been used to constitute collateral estoppel and applied to the facts in the bankruptcy courts. There are a line of minority cases where the courts did not apply misappropriation of trade secrets to collateral estoppel, but both of those cases were cases where there were no attorney's fees, no findings of willful and malicious, and no punitive damages. So that's the distinction between the two lines of cases. Furthermore, one of those cases in the minority group, Miller, has been roundly criticized by this circuit in Ray Sue, for example. We haven't discussed the jury trial issue. The trial court, again, the jury trial issue is really an issue that should have been raised for the California Court of Appeal, but appellant contends that the debtor here was deprived of his rights for jury trial. The trial court was very specific on the record, it was reasoning for doing that, the reasoning being that there were two sets of claims contained in the complaint. There were equitable claims under the unfair competition statutes and there were damages claims. And California law in Redeker v. Gibraltar has stated that when you have equitable and legal claims you can bifurcate the equitable claims from the legal claims, try the equitable claims first before a judge, and that can obviate the subsequent need for a jury. And that's precisely what happened here. Yes, the judge did award damages in the form of attorney's fees, but California law provides that where the gist of the action is in equity and there's some collateral damages awarded, which was the attorney's fees in this case, it can still be tried as an equitable case before a judge, and that's what happened here. And finally, even if he were deprived of his right to a jury trial, counsel contends that that would completely make the judgment void because it's a jurisdictional issue. The cases in Ray Fife and a couple of other cases he cites for that proposition do not say that, they say the failure to award a jury trial by a judge is reversible error to be decided on appeal, but it doesn't go to the jurisdiction of the court, so that would not void the judgment, merely make it voidable by an appellate court, and that was not done here. So for all those reasons, I respectfully request that this court affirm the decisions of the Bankruptcy Court and Bankruptcy Appellate Panel. Thank you, Ms. Valdez. Mr. Dorsey, you have about three minutes. Thank you, Your Honor. To the issue of the court's inquiries as to whether or not in these findings the judge found that there were bad-mouthing, so that it's clear this was a lawsuit against a corporation individual. There's no finding that Mr. Lopez bad-mouthed anybody. There's no finding that there were findings about techs doing things and corporations doing things, and when you try to bundle those up and now try to use those as the backbone for the cause against Mr. Lopez, it does not hold water. Council would like you to believe that, but bifurcation means is that you can rule on the equitable issues and then don't worry about the trial if you have a completely independent factual analysis that is required by the court to award a damage. You don't need to really have a trial on that with a jury because you've made this other decision. That's not the law. The law is that it's a purely legal decision that doesn't require additional findings that should have went to the jury. So one should take the – I don't know that we need to say the judge didn't know what he was doing. Let's say he did know what he was doing for a moment here, and that malice from his point of view, even if he knew it was in the SOD that was prepared, and even if he saw the words, if you're going to assume that he was competent and capable, his definition of that word would not have went to intent to cause injury. It would have simply went to the act itself because he already decided the act itself had been done. There was never an issue of intent to cause injury because it wasn't an issue for the 17200 cause of action. I realize that in light of the cases the court sees, it's hard to separate this case out, but you have to remember as you're looking at this, this was not a case like the others where the judge was issuing it to a jury and they were proceeding with damage claims and all the issues that would have normally found in these type cases. This was not that case. This was the judge telling us all along, listen to me, defendant. I'm not going to rule on things I'm not supposed to. And if we assume that he did and did what he thought he was doing, the most logical conclusion that you should derive from these pleadings is that what he meant by malicious is the same definition that 3426A1 gives us, which is there was an act, despicable though it may have been. I want to ask you a question. I'm still processing something you said just a minute ago, which is that the state court's findings were not specific to Mr. Lopez as distinct from his company. I had understood the findings to refer both to Lopez individually and to his DBA. It depends on what some of them were, some of them weren't. You have to go through and see which ones are which. But as to the actual badmouthing, my recollection of that is that was text going out and saying they had better reps than other people. But the written findings were the court finds that Lopez slash FiberTech misappropriated the customer list. That, you would agree, includes both? The misappropriation, you have proved no intent to injure. It is red-letter law. You do not have to find anything other than you have these trade secrets. You don't have to do anything with them. You're guilty of 17200. You're done. They win. And the fact that the judge was very meticulous in saying these are unjust enrichment, these aren't damages, we're not calculating these based on any damage to you. We're saying this is money that you shouldn't have got. Give it back. Legal profits. Right. And so to reach this next issue, if we assume that the judge was not a bad judge, we assume he was a good judge, then you should rule that his intent was to not find intent to injure because that would require finding it to a jury. But if he's just saying I'm saying your act was an act that damaged the right, not damaged, it was conduct that reached the rights of this person, then you don't get to the requirements of any of the cases cited, none of them. And, you know, my counsel would suggest to you that if each judge had to write those eight or nine words in their findings that said I find that you had specific intent to cause injury, the world would come to an end. No, we wouldn't be here. We wouldn't be wasting your time. And insomuch as they put the words in themselves, they might have been the one to spend the extra seven cents for ink and done it themselves. But they chose not to. And now whatever that finding means, it's the finding that they're stuck with, and there's an alternative meaning to that word malice, and that's the one that should be used in light of those two basic principles that we started this way. Let me see if Judge Graber's question has been answered. It has. I don't have any further questions. Thank you very much, Your Honor. Thank you very much, Mr. Dorsey. Ms. Valdez, thank you, too. The cases argued are submitted. And, Jarell, thank you for your service this week, and we'll stand in recess for this session.
judges: Scullin, Silverman, Graber